UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80968-CIV-MARRA

ORIBERT VILCEUS,

Plaintiff,

vs.

THE CITY OF WEST PALM BEACH, a municipal
corporation and political subdivision of the State
of Florida; OFFICER P. CREELMAN, individually
and as agent and employee of the West Palm Beach
Police Department; BRANDSMART USA OF
FLORIDA, INC., a Florida corporation; and
JOHN DOE as agent or employee of BRANDSMART
USA OF FLORIDA, INC.,

Defendants.

_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Officer P. Creelman's Motion to Dismiss

First Amended Complaint (DE 21) and Defendant City of West Palm Beach's Motion to Dismiss

Count V of Plaintiff's First Amended Complaint (DE 25).  The motions are fully briefed and ripe

for review.  The Court has carefully considered the motions and is otherwise fully advised in the

premises.

I.  Background

Plaintiff Oribert Vilceus' ("Plaintiff") nine-count First Amended Complaint brings claims

against Officer P. Creelman ("Creelman") for excessive force/unreasonable search and seizure

pursuant to 42 U.S.C. § 1983 (count one), common law battery (count two), false arrest/false

imprisonment (count three) and intentional infliction of emotional distress (count four); against

the City of West Palm Beach ("the City") for negligent training and supervision (count five);

against John Doe for assault and battery (count six), false imprisonment (count seven) and

intentional infliction of emotional distress (count eight) and against Brandsmart for negligent

training (count nine).

      According to the First Amended Complaint, on or about March 3, 2006, Plaintiff entered

the West Palm Beach Brandsmart, an electronics and appliance retailer, to compare the price of a

Fujifilm 256 MB XD Picture Card that he had just purchased at a Best Buy retailer no more than

two hours earlier. (First Am. Compl. ¶ 9.)  At the time Plaintiff entered Brandsmart, he had the

original packaging and the receipt for the Fujifilm 256 MB XD Picture Card. (First Am. Compl.

¶ 10.)  When Plaintiff was leaving Brandsmart, "John Doe," the store manager, accused Plaintiff

of shoplifting. (First Am. Compl. ¶ 11.)  Doe then summoned Creelman, who was on detail at

Brandsmart, and told Creelman that Plaintiff had shoplifted. (First Am. Compl. ¶ 12.)

      Creelman told Plaintiff he was under arrest for shoplifting, handcuffed Plaintiff, and led

him into an interrogation room. (First Am. Compl. ¶ 13.)  Once inside the interrogation room,

Creelman pushed Plaintiff into a chair with such force that Plaintiff lost his balance and "almost

missed landing in the chair." (First Am. Compl. ¶ 14.)  Creelman then "forcefully repositioned"

Plaintiff into the chair and Plaintiff's shoulders were held by Doe while Creelman questioned

Plaintiff. (First Am. Compl. ¶ 15.)  Despite the fact that Plaintiff did not resist or attempt to flee,

Plaintiff was handcuffed in the chair.  At one point, Creelman grabbed him by the neck and

choked him. (First Am. Compl. ¶ ¶ 16-17.)  At another point, Creelman put his hand in Plaintiff's

pocket, found the Picture Card and the receipt from Best Buy, and tore up the receipt.  Creelman

told Plaintiff, "Let's pretend this never happened." (First Am. Compl. ¶ 18.)  When Plaintiff told

Creelman that he could never forget what happened, Creelman told Plaintiff that he was "going to take [him] to jail now" and then placed Plaintiff in his police cruiser.  (First Am. Compl. ¶ 19.) Once in the police cruiser, Creelman kept Plaintiff handcuffed for over an hour while Creelman ran a background check and outstanding warrant inquiry.  Upon finding no outstanding warrants, Creelman released Plaintiff. (First Am. Compl. ¶ 20-21.)

On or about the time of this incident, the City had in place certain policies, procedures and practices for police officers to follow in determining probable cause prior to making an arrest and the use of force necessary to making an arrest. (First Am. Compl. ¶ 48.)  By not properly training Creelman, the City created a "zone of risk" that Creelman would be arrested without probable cause and would use excessive force against Plaintiff. (First Am. Compl. ¶ 51.)  The City breached its duty by not properly training and supervising Creelman. (First Am. Compl. ¶ 52.)  As a result of the City's failure to properly train and supervise Creelman regarding the proper polices and procedures, Plaintiff suffered injuries. (First Am. Compl. ¶ 53.)

Creelman moves to dismiss on the following grounds.  First, Creelman states that count one does not meet the heightened pleading standard required when there is a qualified immunity defense. Specifically, Creelman states that it is unclear whether count one is an excessive force claim or includes claims for false arrest and unreasonable search and seizure. Moreover, Creelman states that count one lacks details concerning Plaintiff's injuries and his detention. Next, Creelman asserts that probable cause existed for the arrest or detention of Plaintiff and thus Plaintiff's claims for false arrest and false imprisonment are barred.  Creelman also asserts that there is no fourth amendment violation and that Plaintiff cannot show that any constitutional right was clearly established.  Lastly, Creelman argues that Plaintiff has failed to allege extreme

and outrageous conduct that states a claim for intentional infliction of emotional distress.  In response, Plaintiff states that Creelman's actions were not objectively reasonable given the severity of the crime of which Plaintiff was accused and the lack of threat posed by Plaintiff. With respect to the clearly established law, Plaintiff argues that he could amend the complaint to show his injuries were not de minimus and Creelman had no lawful grounds to detain Plaintiff once it was determined that Plaintiff had not shoplifted.

In addition, the City moves to dismiss count five of the First Amended Complaint, claiming that the City is immune from suit under Florida's sovereign immunity law.  Plaintiff responds that sovereign immunity does not apply because Creelman's actions were operational, not discretionary, and that Creelman placed Plaintiff in a zone of danger when he detained Plaintiff.

II.  Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed.R.Civ.P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III.  Discussion

A. Count One

The Court will first address Creelman's arguments for dismissal of Plaintiff's section 1983 Fourth Amendment claim for unreasonable search and seizure.  In moving to dismiss, Creelman states that probable cause existed for the arrest of Plaintiff and that qualified immunity protects Creelman from liability.  The Court begins by noting that section 1983 provides a cause of action for constitutional violations committed under color of state law.  A violation of the Fourth Amendment is cognizable under section 1983. Reyes v. Maschmeier, 446 F.3d 1199, 1202 (11th Cir. 2006).  When evaluating claims of qualified immunity, the court must consider whether a constitutional right has been violated and whether the right was clearly established by the law at the time of the violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A court may exercise its "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Pearson v. Callahan, 129 S. Ct. 808, 817-18 (2009).

An arrest without probable cause violates the right to be free from unreasonable searches under the Fourth Amendment of the Constitution.  Redd v. City of Enterprise, 140 F.3d 1378,

1382 (11th Cir. 1998).  Probable cause exists where the facts and circumstances presented to a

law enforcement officer "would cause a prudent person to believe, under the circumstances

shown, that the suspect has committed, is committing or is about to commit an offense."  Rankin

v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998).  However, law enforcement officers who make

arrests without probable cause are "'entitled to qualified immunity if there was arguable probable

cause for the arrest.'"  Durruthy, 351 F.3d 1080, 1089 (11th Cir. 2003) quoting Jones v. Cannon,

174 F.3d 1271, 1283 (11th Cir. 1999).  Arguable probable cause exists when "an officer

reasonably could have believed that probable cause existed, in light of the information the officer

possessed."  Durruthy, 351 F.3d at 1089 (quotation marks and citations omitted).  "Arguable

probable cause does not require an arresting officer to prove every element of a crime or to obtain

a confession before making an arrest, which would negate the concept of probable cause and

transform arresting officers into prosecutors."  Lee, 284 F.3d 1188, 1195 (11th Cir. 2002)

(quotations marks and citations omitted).

     Based on the allegations of the First Amended Complaint, the Court finds that there was

initially arguable probable cause to arrest Plaintiff when Creelman was told by the Brandsmart

store manager that Plaintiff had just shoplifted an item.  See Berry v. Savannah Chatham

Metropolitan Police Dept., No.CV408-202, 2009 WL 890588, at * 2 (S.D. Ga. Apr. 2, 2009) (no

indication that probable cause did not exist when police officer relied upon information furnished

by store employees that individual had been caught in act of shoplifting); Hassell v. Lewis, No.

3:06-CV-63 (CDL), 2007 WL 988764, at * 1 (qualified immunity applies for claim of false arrest

for shoplifting when officer made arrest for shoplifting based on information he obtained upon

being summoned to store).  However, once Plaintiff furnished the receipt to Creelman that

showed that he had purchased the item at another retailer, the basis for the arguable probable

cause to arrest Plaintiff dissipated.  Based on the express allegations which the Court must

assume to be true, at some point during the detention, Creelman knew that there was no legal

basis to continue to hold Plaintiff.  See United States v. Edwards, 242 U.S. 928, 934 (10th Cir.

2001) ("[i]f the police learn information that destroys their probable cause to arrest a defendant,

the arrest may become illegal."); cf. McCloud v. Fortune, 262 Fed. Appx. 947 (11th Cir. 2008)

(the plaintiff failed to show in malicious prosecution action that probable cause no longer existed

four months after controlled cocaine buy completed).

     Once Creelman possessed sufficient information to conclude that no probable cause

existed to detain Plaintiff, the law is clearly established that his continued detention of Plaintiff

violated the Fourth Amendment.  See Rodriguez v. Farrell, 280 F.3d 1341, 1345 (11th Cir. 2002)

("A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis

of a section 1983 claim."); Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir.1990) (violation

of the Fourth Amendment right not to be arrested without probable cause gives rise to a claim for

damages under § 1983); Herren v. Bowyer, 850 F.2d 1543, 1547 (11th Cir.1988) ("The law is

'clearly established' that an arrest without a warrant or probable cause to believe a crime has

been committed violates the fourth amendment").  Thus, to the extent that Plaintiff wishes to

advance the theory that Creelman committed a constitutional violation when he continued to

detain him after Plaintiff showed him the receipt, Plaintiff is granted leave to re-plead these

allegations.

     Turning next to Plaintiff's claim for excessive force, the Court finds that this claim must

be dismissed.  Even viewing Plaintiff's facts in the light most favorable to him, Plaintiff has

failed to allege facts demonstrating the use of excessive force by Creelman.  Simply put, it is

axiomatic that "the application of de minimis force, without more, will not support a claim of

excessive force." Nolin v. Isbell, 207 F.3d 1253, 1257 (11ᵗʰ Cir. 2000).  The First Amended

Complaint fails to allege the requisite use of force and injuries for an actionable claim.  See

Vinyard v. Wilson, 311 F.3d 1340, 1348 n.13 (collecting cases where force and injury were held

to be de minimus and not excessive) citing Nolin v. Isbell, 207 F.3d at 1255 (grabbed plaintiff

and shoved him a few feet against vehicle, pushed knee in back and head against van, and

handcuffed him); Gold v. City of Miami, 121 F.3d 1442, 1444 (11th Cir.1997) (handcuffed too

tightly and too long); Jones v. City of Dothan, 121 F.3d 1456, 1458 (11th Cir.1997) (slammed

plaintiff against the wall, kicked his legs apart and required plaintiff to raise hands above head as

officers carried out arrest); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1556 (11th Cir.1993)

(pushed plaintiff against wall while handcuffed), modified, 14 F.3d 583 (11th Cir.1994).

Plaintiff does, however, state in his response memorandum that he failed to plead the specific

injuries he suffered and seeks leave to amend to plead that he sustained "protruding disks at C2-3

and C3-4 and a tear of the annulus at C5-6."  (DE 22 at 2 n.2.)  Thus, the Court will allow

Plaintiff leave to re-plead this claim.

Finally, the Court notes that by pleading both a claim for unreasonable search and seizure

and excessive force in count one, Plaintiff has violated Rule 10(b) of the Federal Rules of Civil

Procedure.  Specifically, each count in the complaint should contain one claim founded upon a

separate transaction.  See Fed. R. Civ. P. 10(b); Murray v. West Palm Beach Housing Auth.,

No.08-80396-CIV , 2008 WL 4927007, at * 1 (S.D. Fla. Nov. 17, 2008).  Thus, to the extent

Plaintiff wishes to pursue a claim for excessive force and unreasonable search and seizure, he

must bring these claims in separate counts.

    B.  Count Four

Creelman also moves to dismiss Plaintiff's claim for intentional infliction of emotional

distress.  Under Florida law, to state a cause of action for intentional infliction of emotional

distress, a complaint must allege four elements: "(1) deliberate or reckless infliction of mental

suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the

distress was severe." Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. Dist. Ct. App.

2007).  Whether conduct is outrageous enough to support a claim for intentional infliction of

emotional distress is a question of law, not a question of fact. Id. at 595; see also Baker v. Florida

Nat. Bank, 559 So. 2d 284, 287 (Fla. Dist. Ct. App. 1990) ("The issue of whether or not the

activities of the defendant rise to the level of being extreme and outrageous so as to permit a

claim for intentional infliction of emotional distress is a legal question in the first instance for the

court to decide as a matter of law.").

> Behavior claimed to constitute the intentional infliction of emotional distress must be
> "'so outrageous in character, and so extreme in degree, as to go beyond all possible
> bounds of decency.' " Ponton v. Scarfone, 468 So.2d 1009, 1011 (Fla. Dist. Ct. App.
> 1985) quoting Metropolitan Life Ins. v. McCarson,  467 So.2d 277, 278 (Fla. 1985). In
> applying that standard, the subjective response of the person who is the target of the
> actor's conduct does not control the question of whether the tort of intentional infliction
> of emotional distress occurred. Id. Rather, the court must evaluate the conduct as
> objectively as is possible to determine whether it is " 'atrocious, and utterly intolerable in
> a civilized community.' " Id. quoting Metropolitan, 467 So.2d at 278.

Liberty Mut., 968 So.2d at 594-95.

While the conduct alleged, if true, is clearly wrong, it does not meet the standard of being

"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency and to be regarded as atrocious, and utterly intolerable in a civilized community."

Metropolitan, 467 So.2d at 278-79 quoting Restatement (Second) of Torts § 46 (1965). See e.g.,

Williams v. Southeast Florida Cable, Inc., 782 So.2d 988 (Fla. 4th DCA 2001) (holding trial

court did not err in dismissing claim for intentional infliction of emotional distress where the

alleged conduct did not rise to the level of outrageousness required under Florida law).

Accordingly, Plaintiff's claim for intentional infliction of emotional distress is dismissed for

failure to state a claim upon which relief can be granted.[1]

    C.  Count Five

    The City has moved to dismiss Plaintiff's claim for negligent training and supervision,

asserting that the City is immune from suit and the claims are not cognizable under Florida law.

According to the City, Plaintiff's claim against the City is barred by sovereign immunity.

    The Eleventh Circuit recently explained Florida sovereign immunity law in Cook ex rel.

Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1117-18 (11th Cir. 2005):

> [U]nder Florida law, "a governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1266 (11th Cir. 2001) citing Dep't of Health & Rehabilitative Servs. v. Yamuni, 529 So. 2d 258, 260 (Fla.1988). As the Supreme Court of Florida has explained recently, "if a duty of care is owed, it must then be determined whether sovereign immunity bars an action for an alleged breach of that duty. In making this assessment, it is necessary to ascertain the character of the allegedly negligent governmental act or omission. As this Court has determined, basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity." Pollock v. Fla. Dep't of Highway Patrol, 882 So.2d 928, 933 (Fla. 2004) (citation omitted).

---

[1] The "wherefore" clause of Creelman's motion also seeks dismissal of count three of the First Amended Complaint. Creelman's motion, however, is devoted to count one, the section 1983 claim, and count four, the intentional infliction of emotional distress.  There is no legal argument presented for the Court's consideration on the common law false arrest/false imprisonment claim.  As such, the Court will not consider dismissal of this claim.

> A discretionary function, under Florida law, is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." Henderson v. Bowden, 737 So.2d 532, 538 (Fla.1999) (citation and internal quotation marks omitted). "An 'operational' function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." Id. (citation and internal quotation marks omitted). Florida's discretionary function exception to its general waiver of sovereign immunity "is grounded in the doctrine of separation of powers," and "it would be an improper infringement of separation of powers for the judiciary, by way of tort law, to intervene in fundamental decisionmaking of the executive and legislative branches of government, including the agencies and municipal corporations they have created." Kaisner v. Kolb, 543 So.2d 732, 736-37 (Fla.1989).

Cook, at 1117-18.

Based on this discussion, the Court in Cook determined that the plaintiff's challenged actions, which concerned the sheriff's decisions regarding the training of its officers and the subject matter to include in the training, were discretionary governmental functions immune from legal actions.  Id. at 1118.  On the other hand, the Eleventh Circuit has found that when a plaintiff challenges the implementation of a training program as opposed to the content of the program, sovereign immunity does not apply to that operational act.  See Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005); Lewis v. City of St. Petersburg, 260 F.3d 1260, 1266 (11th Cir. 2001).

Plaintiff argues that the operational and not discretionary function applies here.  After careful examination of the First Amended Complaint, the Court finds that it is unclear whether Plaintiff is challenging the content of the training materials (First Am. Compl. ¶ 48-49) or the manner by which the training program was implemented with respect to Creelman (First Am. Compl. ¶ ¶ 50-53).  Thus, in order that the case may be clear going forward, Plaintiff is granted leave to amend.  Given the law highlighted supra, Plaintiff can only state a valid claim for

negligent training and supervision if he challenges the City's implementation of the training program as it pertains to Creelman and this incident.  Of course, Plaintiff must, in good faith, be able to allege the necessary facts to support a finding that the operational function applies and the sovereign immunity bar is inapplicable.[2]

Lastly, the Court rejects the City's argument that Plaintiff seeks to transform improperly Creelman's arrest from a discretionary function to an operational function.  Count five is brought against the City, not Creelman.  As such, it does not concern the arrest by Creelman but the liability of the City with respect to the training of Creelman.  Hence, the cases cited by the City that stand for the proposition that police officers act within their discretionary authority when they make an arrest are inapposite to negligent training and supervision claims.[3]

Based on the foregoing, count five is dismissed to the extent it is barred under the discretionary function of the sovereign immunity bar.   Plaintiff is granted leave to amend count five consistent with the directives set forth herein.

_____

[2] The Court rejects Plaintiff's argument that this claim against the City survives because Creelman placed Plaintiff in the "zone of danger" once he placed Plaintiff under arrest.  The "zone of danger" line of cases refers to affirmatively negligent acts by the police which place a person in a zone of danger when such a person is in the physical custody of the policy following detention or arrest; i.e., when the police negligently orders a handcuffed motorist to remain at a particular location of danger in the street resulting in injury.  Kaisner v. Kolb, 543 So. 2d 732 (Fla. 1989).  None of Plaintiff's allegations suggest that Creelman acted with negligence. To the contrary, the allegations, if taken as true, demonstrate that Creelman committed an intentional tort against Plaintiff.   There can be no cause of action for the negligent use of force.  Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1294 (11th Cir. 2009) citing  City of Miami v. Ross, 695 So. 2d 486, 487 (Fla. Dist. Ct. App. 1997); City of Miami v. Sanders, 672 So. 2d 46, 48 (Fla. Dist. Ct. App. 1996).  Thus, Plaintiff should not pursue this theory in amending his complaint.

[3] The City's motion to dismiss count five on the basis that Plaintiff has failed to state a claim against the active tortfeasor (i.e., Creelman) is denied without prejudice.  The City may reassert this argument when and if the claims against Creelman are dismissed.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

(1)    Defendant Creelman's Motion to Dismiss First Amended Complaint (DE 21) is

        **GRANTED IN PART AND DENIED IN PART**.

(2)    Defendant City of West Palm Beach's Motion to Dismiss Count V of Plaintiff's

        First Amended Complaint (DE 25) is **GRANTED IN PART AND DENIED IN**

        **PART**.

(3)    Plaintiff is granted leave to amend the First Amended Complaint consistent with

        this Order **within ten days from the date of entry of this Order.**

    **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 27th day of July, 2009.

                                          _____

                                          KENNETH A.  MARRA
                                          United States District Judge